IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICO FINANCIAL LIFE AND ANNUITY INS. CO., <br><br> Plaintiff, <br><br> vs. <br><br> THOMAS KELLY, et al, <br><br> Defendants. <br> ──────────────────────────/ <br> AND RELATED CROSS-ACTION <br> ──────────────────────────/ | CASE NO. CV-F-04-5997 LJO <br><br> **ORDER ON AMERICO'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT** (Doc. 49, 50) |

On September 14, 2005, Plaintiff/Counter-Defendant Americo Financial Life and Annuity Ins. Co. ("Americo") filed a notice of motion for: (1) judgment on the pleadings against counter claimant Thomas Kelly, and (2) motion for summary judgment. Thomas Kelly filed an opposition on September 29, 2005 and a supplement on October 12, 2005. Americo filed a reply brief on October 7, 2005. Pursuant to Local Rule 78-230(h), this matter is submitted on the pleadings without oral argument. Therefore, the hearing set for October 14, 2005 is vacated. Having considered the moving, opposition, and reply papers, as well as the arguments of counsel and the Court's file, the Court issues the following order.

/////

/////

**FACTUAL AND PROCEDURAL BACKGROUND**

This case is an interpleader action filed by Americo Financial Life and Annuity Ins. arising from the proceeds of an annuity issued to Virginia Kelly. Virginia Kelly is identified as the joint owner of the contract, with defendant/counter claimant Thomas Kelly ("Thomas") as the other joint owner and sole beneficiary. The net value of the contract, as of July 15, 2004, is $292,857.00. Thomas Kelly is Virginia Kelly's stepson. Co-defendant, Clara Lucas, is Virginia Kelly's sister. Co-defendants, Carlene Lucas, Diane Seifuddin, and Arlene Beale, are adult children of Clara Lucas and nieces of Virginia Kelly.

Virginia Kelly died on January 9, 2004. On May 15, 2004, Thomas submitted the Application for Proceeds and Claimant's Statement to Americo for payment of all net proceeds of the contract.

This motion involves the complaint in interpleader. Plaintiff alleges that defendant Clara M. Lucas, Carlene Lucas, Diane Seifuddin, and Arlene Beale (collectively "Clara Lucas") claim all or a portion of the Annuity Proceeds because Thomas Kelly engaged in undue influence and /or fraud in having himself named as beneficiary. Complaint 5-8. Americo alleges that the "claims of defendant are adverse and conflicting. Plaintiff is without knowledge of the respective rights of the defendants in and to the Annuity Proceeds . . ." Complaint 10. This motion also involves the counter complaint. Counter claimant Thomas Kelly has two claims against Americo: one for breach of contract and another claim for invasion of privacy.

**ANALYSIS & DISCUSSION**

**A.   Standards for Review**

    **1.   Plaintiff's Motion for Judgement on the Pleadings**

Plaintiff moves for judgment on the pleadings.

A Rule 12(c) motion challenges the legal sufficiency of the opposing party's pleadings. Ludgment on the pleadings is appropriate when, even if all material facts in the pleading under attack are true, the moving party is entitled to judgment as a matter of law. *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F2d 1542, 1550 (9th Cir. 1989). The court must assume the truthfulness of the material facts alleged in the complaint. Moreover, all inferences reasonably drawn from these facts must be construed in favor of the responding party. *General Conference Corp. of Seventh-Day Adventists v.*

1 *Seventh-Day Adventist Congregational Church*, 887 F2d 228, 230 (9th Cir. 1989).

**2.     Summary Judgment**

Initially, it is the moving party's burden to establish that there is "no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *British Airways Board v. Boeing Co.,* 585 F.2d 946, 951 (9th Cir. 1978).  Rule 56(e) requires the party against whom the motion is made to "set for specific facts showing that there is a genuine issue for trial." Absent such a showing, a properly supported motion for summary judgment may be granted if the court finds it appropriate." *Nelson, Robbins, et al v. Louisiana Hydrolec*, 854 F.2d 1538, 1545 (9th Cir. 1988).

To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First National Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968); *T.W. Elec. Serv. v. Pacific Elec. Contractors*, 809 F.2d 626, 631 (th Cir. 1987).  The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"*Matasushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted).  The opposing party's evidence is to be believed and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 255 (1986).  The court must not weigh the evidence and must draw all reasonable inferences in favor of the nonmoving party. *See Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir.1997).

The court, however, has no duty to search the record, *sua sponte*, for some genuine issue of material fact; the court may rely entirely on the evidence of the moving party. *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 403 (6th Cir. 1992).  If the motion is based on deposition testimony, the court may rely exclusively on portions highlighted by the moving party and need not comb the deposition to discover conflicting testimony. *Guarino v. Brookfield Township Trustees, supra*, 980 F.2d at 403.  The court is not obligated to consider matters not specifically brought to its attention. Thus, it is immaterial that helpful evidence may be located somewhere in the record. The opposition must designate and reference specific triable facts. *Frito-Lay, Inc. v. Willoughby* (DC Cir. 1988) 863 F.2d

1029, 1034. Inferences drawn from the evidence, however, must be viewed in the light most favorable to the nonmoving party. *Eastman Kodak Co. v. Image Technical Services, Inc.,* 504 U.S. 451, 456 (1992).

**B.    Interpleader**

The parties argue that state interpleader law applies.

An state interpleader action may be filed by:

> "Any person, firm, corporation, association or other entity against whom double or multiple claims are made, or may be made, by two or more persons which are such that they may give rise to double or multiple liability, may bring an action against the claimants to compel them to interplead and litigate their several claims." Cal.Code Civ.Proc. § 386.

Section 386(b) further provides:

> "The action of interpleader may be maintained although the claims have not a common origin, are not identical but are adverse to and independent of one another, or the claims are unliquidated and no liability on the part of the party bringing the action or filing the cross-complaint has arisen. . ."

Cal.Code Civ.Proc. § 386.

Federal statutory interpleader, however, authorizes interpleader in federal court when:

> "Two or more adverse claimants, of diverse citizenship as defined in subsection (a) or (d) of section 1332 of this title, are claiming or may claim to be entitled to such money or property, or to any one or more of the benefits arising by virtue of any note, bond, certificate, policy or other instrument, or arising by virtue of any such obligation . . ."

28 U.S.C.A. § 1335(a)(1).

The parties assume that the state interpleader action applies.

**C.    Motion to Dismiss - Right to Cross-Claim**

Americo argues that it is entitled to judgment on the pleadings because, as a matter of law, Thomas cannot sustain a cross-claim against plaintiff.

Americo argues that in federal interpleader actions, the state substantive law applies. *Equitable Life Assur. Soc. of U.S. v. McKay*, 837 F.2d 904 (9th Cir. 1988) (in a life insurance interpleader to determine the beneficiary of two life insurance policies, the court stated, "Because this action is an interpleader action brought under 28 U.S.C. § 1335, the federal district court was required to apply the substantive law that a court of the forum state would apply."); *Bluff Creek Oil Co. v. Green*, 257 F.2d

1  83, 85 (5th Cir. 1958) (statutory interpretation is substantive); *Amoco Transport Co. v. Dietze, Inc.*, 582
2  F.Supp. 804, 806 (S.D.N.Y.) 1984) ("[F]ederal interpleader actions, premised upon diversity of
3  citizenship of the claimants, are no different than [sic] ordinary diversity actions in that state substantive
4  law is to be applied. In particular, the substantive law of the forum state should be applied to determine
5  whether interest is due.")

6  Americo did not cite, and merely assumes, that the right to file cross-claims is substantive and
7  not procedural.

8  Under state law, defendants in an interpleader action may cross-complain against each other, but
9  no cross-complaint lies against the stakeholder. Unless the stakeholder waives this limitation (e.g., by
10 failure to object), the only relief available to a defendant against the stakeholder is to have the
11 interpleader action *dismissed. State Farm Fire & Cas. Co. v. Pietak,* 90 Cal.App.4th 600, 613, 109
12 Cal.Rptr.2d 256, 265 (2001). The *Pietak* court acknowledged that several Courts of Appeal had allowed
13 the parties to litigate other claims as cross-actions to an interpleader, but noted that in each of the cases,
14 the cross-action had not been challenged. "[B]ecause the remedy is for the benefit of the stakeholder,
15 presumably the stakeholder may waive it. Thus, if a stakeholder does not object to an independent claim
16 raised by a claimant, there is no reason to believe it cannot be considered in the interpleader action. In
17 effect, the stakeholder has chosen to forgo the remedy and to resolve the independent claim in the same
18 action." *Id.* at p. 614. As against the stakeholder, claimants may raise only matters which go to whether
19 the suit is properly one for interpleader, i.e., whether the elements of an interpleader action are present.
20 *Connor v. Bank of Bakersfield*, 183 Cal. 199 (1920); See *Cantu v. Resolution Trust Corp.*, 4 Cal.App.4th
21 857, 6 Cal.Rptr.2d 151 (1992) (conduct of savings and loan association, its former president, and its
22 attorneys in bringing interpleader action was authorized by interpleader statute; therefore, association,
23 former president, and attorneys could not incur tort liability for naming someone as potential claimant
24 when filing interpleader action.)

25 Under federal law, a stakeholder may face compulsory counterclaims. *See Minnesota Mut. Life*
26 *Ins. Co. v. Ensley*, 174 F.3d 977, 981 (9th Cir. 1999) (summary judgment was granted to the insurer
27 against certain counterclaims based on the unique facts of the case, not simply because the insurer filed
28 a cross complaint against the interpleader); *Libby, McNeill, and Libby v. City Nat. Bank*, 592 F.2d 504,

1  507 (9th Cir. 1978) (The modern trend has been to the contrary, and it "now seems to be settled that (Fed.R.Civ.P.) Rule 13 which provides for compulsory and permissive counterclaims is applicable to interpleader suits."); *Wayzata Bank & Trust Co. v. A & B Farms*, 855 F.2d 590, 593 (8th Cir. 1988) (compulsory counterclaim against stakeholder for breach of fiduciary duty permitted.)[1]

The inference the Court must draw is that the law on interpleader is substantive based upon the state court decisions and the grounds stated. Under California state law, counter claims against the stakeholder are not permitted. Therefore, the motion for judgment on the pleadings should be granted.

**D.  Breach of Contract Cause of Action**

Even if the motion for judgment on the pleadings were denied, the motion for summary judgment would be granted.

Thomas argues that failure to pay the Annuity to him and instituting this interpleader is a breach of contract. Thomas argues that plaintiff improperly instituted this interpleader because Americo was not truly threatened with multiple litigation. Clara Lucas had no ownership interest in the annuity, no legal action pending against Americo, and Americo no reason to believe the there would be "vexatious" litigation against.

In an interpleader action, the adverse interest necessary need not be concrete. "The right to the remedy by interpleader is founded, however, not on the consideration that a [person] may be subjected to double liability, but on the fact that he is threatened with double vexation in respect to one liability." *City of Morgan Hill v. Brown*, 71 Cal.App.4th 1114, 1122, 84 Cal.Rptr.2d 361, 365 - 366 (1999). The purpose of federal interpleader is to protect the stakeholder against the *possibility* of multiple liability on the same debt, even where only one claim is pending. See *Minnesota Mut. Life Ins. Co. v. Ensley,* 174

---

[1] Thomas cites *Bank of America National trust & Sav. v. Mamakos*, 57 F.R.D. 198 (N.D. Cal. 1972), a disinterested stakeholder can be subjected to at least a compulsory counterclaim.

In *Bank of America Nat. Trust and Sav. Ass'n v. Mamakos*, the issue before the Court was whether the stockholder was entitled to its request for attorneys fees and costs upon discharge. One of the competing claimants was the Government for tax liens. The Government's lien for taxes was in excess of amount of taxpayers' funds held by bank. The court held that in United States tax cases, at least, the attorneys' fees and costs are tied to the fund. If the government gets the whole fund, the fundholder takes nothing from it for attorney's fees and costs. the bank which filed an interpleader action was not entitled to attorneys' fees and costs. 57 F.R.D. 198. The case does not stand for the proposition that a cross-complaint may be maintained against the stakeholder.

1  F.3d 977, 980 (9th Cir. 1999). Actual claims need not have been filed against the stakeholder, nor
2  reduced to judgment. It is sufficient if the stakeholder can demonstrate a *real and reasonable* fear of
3  multiple liability. *State Farm Fire & Cas. Co. v. Tashire,* 386 US 523, 87 S.Ct. 1199 (1967). Thus,
4  under either state or federal statute, when a person <u>may be</u> subject to conflicting claims for money or
5  property, the stake holder may bring an interpleader action to compel the claimants to litigate their
6  claims among themselves.

7  The determining factor is whether there was a good faith belief by the stakeholder that it faced
8  the possibility of multiple claims. *Minnesota Mut. Life Ins. Co. v. Ensley*, 174 F.3d 977, 981 (9th Cir.
9  1999). The issue is one of good-faith doubt before commencing an interpleader action. *Hancock Oil Co.*
10 *v. Hopkins*, 24 Cal.2d 497, 150 P.2d 463 (1944). "But the [plaintiff] may not maintain such a suit upon
11 the mere pretext or suspicion of double vexation; he must allege facts showing a reasonable probability
12 of double vexation." 24 Cal.2d at 510.

13 The parties have not cited to any authority on the issue of plaintiff's good-faith doubt is a
14 question of law or a question of fact in an interpleader action. Regardless of whether it is an issue of law
15 or fact, the facts are not in dispute that Americo had a good faith belief that it may face multiple claims.

16 Thomas raises the issue because Americo provided the forms on which Clara Lucas submitted
17 the claim for the Annuity. Thomas points to the claim forms submitted by Clara Lucas (Exh. A, B, C,
18 and D. to declaration of David Sullivan). On or about March 12, 2004, Americo received written claims
19 from Clara on claim forms, presumably, provided by Americo to Clara Lucas for such purpose. (See
20 Thomas Kelly's Disputed Facts, Doc. 62, Part 4, Facts #3-6.) The evidence submitted by Americo does
21 not state what was the <u>initial</u> contact from Clara Lucas, whether Americo was contacted by telephone
22 or by letter. (An undated letter in Exh. A to Decl. Of David Sullivan, bates stamped 000372, Doc.
23 Provides information about the Clara Lucas.) There is no evidence, however, for the inference that
24 Thomas argues: that it was <u>Americo</u> who initiated contact with Clara Lucas and somehow "stirred up"
25 conflicting claimants.

26 Moreover, Thomas does not dispute that Clara Lucas <u>actually asserts</u> a right to the annuity.
27 Thomas' Disputed Facts state that it is "undisputed" that Clara Lucas asserts a right to the Annuity
28 proceeds. (See Thomas Kelly's Disputed Facts, Doc. 62, Part 4, Facts #7.) Thomas acknowledges that

Clara Lucas asserts a claim to the annuity and that Clara also disputes that Thomas is entitled to the Annuity. (See Thomas Kelly's Disputed Facts, Doc. 62, Part 4, Facts #9.) Moreover, Thomas does not dispute that Americo received Thomas' claim for the Annuity proceeds <u>after</u> Clara Lucas had submitted her claim. (See Thomas Kelly's Disputed Facts, Doc. 62, Part 4, Facts #9.) Thus, without dispute, Americo faced conflicting claims for the same fund of money. Americo instituted the interpleader action only <u>after</u> receiving all the conflicting claims.

Accordingly, it is undisputed that Americo acted in good faith. The interpleader action was instituted <u>after</u> all of conflicting claims had been received by Americo. There is no dispute that there are adverse claimants to the same fund of money held by Americo, now deposited into the Court. As a matter of law, Americo satisfied its obligation under the contract by instituting the interpleader action. *Minnesota Mut. Life Ins. Co. v. Ensley*, 174 F.3d 977, 981 (9th Cir. 1999).

**E.     Privacy Cause of Action**

Thomas claims that his right to privacy was violated when Americo provided information about the Annuity to Clara Lucas.

Thomas' privacy claim is based on Article I, Section I, of the California Constitution, which provides: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy."

In *Hill v. National Collegiate Athletic Assn.,* 7 Cal.4th 1, 26 Cal.Rptr.2d 834, 865 P.2d 633 (1994), the court set out the elements of a cause of action for invasion of the right to privacy guaranteed by the California Constitution. *Id.* at 32-37, 26 Cal.Rptr.2d 834. The court stated that a plaintiff must show (1) a legally protected privacy interest; (2) a reasonable expectation of privacy; and (3) a serious invasion of the privacy interest. *Id.* at 35-37, 26 Cal.Rptr.2d 834. Whether a legally protected privacy interest exists is a question of law. *Id.* at 40, 26 Cal.Rptr.2d 834. The second and third elements of the privacy claim--reasonable expectation of privacy and serious invasion--involve mixed questions of law and fact. *Tom v. City and County of San Francisco,* 120 Cal.App.4th 674, 679, 16 Cal.Rptr.3d 13, 17 (2004).

### 1. Legally protected privacy interest

As the California Supreme Court explained in *Hill*, there are two general classes of legally recognized privacy interests: (1) interests in precluding dissemination or misuse of sensitive and confidential information or "informational privacy"; and (2) interests in making intimate personal decisions or conducting personal activities without observation, intrusion, or interference or "autonomy privacy." *Hill v. National Collegiate Athletic Assn.,* 7 Cal.4th at p. 35, 26 Cal.Rptr.2d 834. The privacy right at issue in this case is the "informational privacy."

The communications that are at issue in this claim, are the letters from Kiley Sieb of Americo to the Clara Lucas claimants, dated April 7, 2004, June 4, 2004 and July 8, 2004. The April 7, 2004 letter from Seib to Clara Lucas informed her that Americo received the claimants' forms and that the primary beneficiary to the Annuity is Thomas Kelly. The letter also identified the policy number and identified the Annuitant (Virginia Kelly). (Exh. A to Seib Decl.) The June 4, 2004 letter was addressed to Thomas with copies to Diane Seifuddin. The letter informs Thomas that other claims have been made to the Annuity and that Americo's intended to commence an interpleader action. (Exh. C to Seib Decl.) In terms of potentially confidential information, the June 4, 2004 letter discloses that Thomas made a claim to the Annuity policy, the policy number and identified the Annuitant (Virginia Kelly). The July 8, 2004 letter was sent to Thomas and advised him that Americo would file an interpleader. A copy of the letter was sent to Clara Lucas. (Exh. D to Seib Decl.) The letter also identified the policy number and identified the Annuitant (Virginia Kelly).

Thus, the dissemination of the annuity policy number and the identification of Thomas as a claimant are the potential violations of privacy.

Thomas has not cited on point authority for the proposition that he has a legally protectible interest against the disclosure of the annuity policy number or his identification.

Thomas argues that mere discussion of the annuity contract, and the disclosure of its number and amount (described in the various communications between Seib and the Lucas claimants)[2] is a violation of his financial privacy. He argues Cal. Civ. Code §1798 et seq describes the right to privacy in all

---

[2] Contrary to Thomas' argument, the letters never identified the amount of the Annuity.

information pertaining to him, which included financial matters. §1798.3(a).

Cal.Civ.Code 1798.3 (a) provides:

> "The term 'personal information' means any information that is maintained by an agency that identifies or describes an individual, including, but not limited to, his or her name, . . ."

The term "agency" is defined as:

> "every state office, officer, department, division, bureau, board, commission, or other state agency . . ."

There is no evidence before the Court that Americo is an "agency" within the definition of Cal.Civ.Code 1798.3(a).

Thomas has not shown that he has a legally protected right against the disclosure of the information in the letters of April 7, 2004, June 4, 2004 and July 8, 2004.

**2.  Reasonable expectation of privacy and the serious invasion**

Assuming that Thomas does have a legally protected interest against the disclosure, the other elements in the privacy claim must be shown: a reasonable expectation of privacy and the serious invasion of privacy.

"A 'reasonable' expectation of privacy is an objective entitlement founded on broadly based and widely accepted community norms," and "the presence or absence of opportunities to consent voluntarily to activities impacting privacy interests obviously affects the expectations of the participant." *Hill v. National Collegiate Athletic Assn.*, 7 Cal.4th at 36. Customs, practices, and physical settings surrounding particular activities may create or inhibit reasonable expectations of privacy. *Hill v. National Collegiate Athletic Assn.,* 7 Cal.4th at 36. The "community norms" aspect of the "reasonable expectation" element of an invasion of privacy claim is this: " 'The protection afforded to the plaintiff's interest in his privacy must be relative to the customs of the time and place, to the occupation of the plaintiff and to the habits of his neighbors and fellow citizens.' *TBG Ins. Services Corp. v. Superior Court*, 96 Cal.App.4th 443, 450, 117 Cal.Rptr.2d 155, 161 (2002).

As to the element of the seriousness of the invasion of privacy, the California Supreme Court has stated: "No community could function if every intrusion into the realm of private action, no matter how slight or trivial, gave rise to a cause of action for invasion of privacy." *Hill,* 7 Cal.4th at 36. "Complete

privacy does not exist in this world except in a desert, and anyone who is not a hermit must expect and endure the ordinary incidents of the community life of which he is a part." *Id.*, quoting the Restatement of Torts.) Actionable invasions of privacy must be sufficiently serious in their nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right. Thus, the extent and gravity of the invasion is an indispensable consideration in assessing an alleged invasion of privacy." *Hill v. National Collegiate Athletic Assn.,* 7 Cal.4th at 36.

As a matter of law, Thomas has not shown a serious invasion of privacy by the disclosure the information by Americo to competing claimants. It is undisputed that the claimants were competing for the same Annuity contract. Thus, the disclosure of the policy number was not invasion of Thomas' privacy. Moreover, the disclosure of Thomas as the beneficiary of the Annuity is not a <u>serious</u> invasion of privacy. Complete privacy cannot be expected on the subject of the Annuity against which the claimants are competing.

**F.     Award of Attorneys fees and Costs**

Courts have discretion to award attorney fees to a disinterested stakeholder in an interpleader action. Although there is no precise statutory authority, such awards are upheld under the court's inherent equitable powers. *Abex Corp. v. Ski's Enterprises, Inc.*, 748 F.2d 513, 516, (9th Cir. 1984). The allowability and amount of fee award are in the discretion of the court. *Murphy v. Travelers Ins. Co.*, 534 F.2d 1155, 1164 (5th Cir. 1976).

In the declaration of Stephen Drobney, Americo is entitled to fees and costs of $12,022.85 with respect to the commencement and litigation of the interpleader. (Doc. 52, para.4). Americo incurred $11,051.25 in fees and $971 in costs. An additional $800 is expected to be incurred for filing a reply to this motion and for hearing on the motion.

Mr. Drobney is a member of the bar since 2002 and a graduate of Boston College Law School. (Doc. 52, para. 4.) Since January 1, 2005, he has been billing at a rate of $160, and previously, his rate was $150.

Americo has failed to provide any documentary evidence to support the claim for attorneys fees. Billing statements are not submitted and invoices for costs are not provided. While the amount requested, of $12,000 may not be unreasonable, given the nature of the disputed interpleader, the Court

cannot determine whether the amount of fees requested should be awarded. Accordingly the request for an award of fees and costs is denied.

## CONCLUSION

For the foregoing reasons, the Court orders as follows:

1. The motion for judgment on the pleadings by Americo Financial Life and Annuity Ins. Co. is GRANTED.

2. In the alternative, the motion for summary judgment by Americo Financial Life and Annuity Ins. Co. is GRANTED.

3. The request for an award of attorneys' fees and costs is DENIED.

IT IS SO ORDERED.

**Dated:   October 13, 2005**                    /s/ Lawrence J. O'Neill
b9ed48                                            UNITED STATES MAGISTRATE JUDGE